**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| HYME J. URBINA, | ) | Case No. 3:22-CV-00853-PAB |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| JENNY HILDEBRAND, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.    INTRODUCTION

Petitioner, Hyme J. Urbina ("Mr. Urbina"), seeks a writ of habeas corpus under 28
U.S.C. § 2254. (ECF No. 1). Mr. Urbina, who was previously granted judicial release while
serving a sentence of 19 years and 11 months, is now serving a sentence of ten and a half
years for burglary, robbery, theft, and cocaine possession after the state court revoked his
community control/probation and reimposed the balance of his sentence.

Mr. Urbina asserts four grounds for relief. Respondent, Warden Jenny Hildebrand
("Warden"), filed an answer/return of writ on October 13, 2022. (ECF No. 9). Mr. Urbina did
not file a traverse. This matter was referred to me on September 2, 2022 under Local Rule
72.2 to prepare a report and recommendation on Mr. Urbina's petition. (*See* ECF non-
document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr.
Urbina's petition be DENIED. I further recommend that this Court not grant Mr. Urbina a
certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Third District summarized the facts as follows:

{¶2} In 2006, Urbina was sentenced to an aggregate term of 19 years and 11 months in prison for offenses ranging from robbery and burglary to possession of cocaine and failure to comply with the order or signal of a police officer. After serving 12 years and 6 months in prison, Urbina filed a motion for judicial release on November 15, 2018. On February 14, 2019, the trial court granted Urbina's motion for judicial release. The trial court suspended the balance of Urbina's prison sentence and placed him on community control for a period of 5 years. Upon his release from prison, Urbina resided in Ohio for a short time before moving to Texas, where his supervision was transferred.

{¶3} In late June 2020, Urbina was arrested for disorderly conduct in Defiance County. Urbina was taken to the City of Defiance Police Department where he was met by a probation officer. The probation officer requested that Urbina submit to a drug screen. Urbina refused.

{¶4} On July 2, 2020, the State filed a motion to revoke Urbina's community control and reimpose the balance of his prison sentence. As grounds for its motion, the State alleged that Urbina had violated the conditions of his community control by leaving his county of residence in Texas without prior permission and by refusing to submit to the drug screen as requested. On July 16, 2020, Urbina was released on his own recognizance, and a probable-cause hearing was scheduled for July 21, 2020. At a probation meeting on July 17, 2020, Urbina tested positive for the consumption of alcohol and admitted to using methamphetamines.

{¶5} Urbina failed to appear for the July 21, 2020 probable-cause hearing and a warrant for his arrest was issued. On July 23, 2020, the Defiance County Grand Jury indicted Urbina for failure to appear as required by his recognizance bond in violation of R.C. 2937.29 and 2937.99.

{¶6} Urbina was eventually arrested and a probable-cause hearing was held on September 17, 2020, at which the trial court concluded there was probable cause to find that Urbina had violated the conditions of his community control. An adjudicatory hearing was initially scheduled for October 8, 2020. However, over the next five months, the adjudicatory hearing was continued or rescheduled a total of six times.

{¶7} Meanwhile, on October 9, 2020, the State filed a supplemental motion to revoke Urbina's community control. The State's supplemental motion asserted additional grounds for revoking Urbina's community control, specifically that Urbina had been indicted for failure to appear as required by his recognizance bond and that he had tested positive for alcohol on July 17, 2020.

{¶8} The adjudicatory hearing was finally held on March 31, 2021. At the beginning of the hearing, Urbina again moved for a continuance. This time, the trial court declined to continue the hearing. At the conclusion of the hearing, the trial court found by a preponderance of the evidence that Urbina had violated multiple conditions of his community control. Specifically, the trial court found that Urbina "absconded supervision by leaving the State of Texas without proper permission or authority; that [he] violated Ohio law by failing to appear for a scheduled hearing in this Court after being released on a personal recognizance bond; that he failed to submit to a drug screen as directed by a supervising officer; and that he admittedly used methamphetamine and alcohol." Accordingly, the trial court revoked Urbina's community control and reimposed the balance of his previously suspended prison sentence. The trial court filed its judgment entries on April 12, 2021.

(ECF No. 9-1, Exhibit 41); *State v. Urbina*, Nos. 4-21-08 and 4-21-09, 2021 WL 5764872, 2021-Ohio-4254 (3d Dist. Dec. 6, 2021).

## III. PROCEDURAL HISTORY

### A. State Court Conviction and Probation Revocation

On April 28, 2006, Mr. Urbina was convicted in the Defiance County Court of Common Pleas on charges of robbery, burglary, and theft, in a case captioned *State of Ohio v. Urbina*, No. 05-CR-09186. (ECF No. 9-1, Exhibit 9). On the same date, Mr. Urbina was convicted of possession of cocaine in a case captioned *State of Ohio v. Urbina*, No. 05-CR-09264. (CF No. 9-1, Exhibit 10). On May 8, 2006, the trial court sentenced Mr. Urbina to a total of nine years and six months in Case Number 05-CR-09186. (ECF No. 9-1, Exhibit 12). On the same date, the trial court sentenced Mr. Urbina to a term of twelve months in Case Number 05-CR-09264. (ECF No. 9-1, Exhibit 13). The trial court also ordered that Mr. Urbina would serve his sentences consecutively to each other and to his sentences in two other cases, Case Numbers 04-CR-08946 and 04-CR-08972, for an aggregate sentence of 19

3

years and 11 months. (ECF No. 9-1, Exhibits 12-13).

On November 15, 2018, Mr. Urbina, through counsel, filed a motion for judicial release, stating that he had served over 12 years of his sentence, had learned to obey the rules, and planned to relocate to Texas to live with his mother if judicial release were granted. (ECF No. 9-1, Exhibit 27). On February 14, 2019, the trial court granted Mr. Urbina's motion for judicial release and suspended the remainder of his sentence, placing him on five years of community control. (ECF No. 9-1, Exhibit 29). The court also advised Mr. Urbina that it reserved the right to reimpose the balance of his sentence if he violated his community control restrictions. *Id*.

On July 2, 2020, the State filed a motion to revoke Mr. Urbina's probation and to reimpose his sentence, alleging that Mr. Urbina had violated his community control restrictions by: (1) leaving Texas and returning to Ohio without the permission of his probation officer; and (2) refusing to submit to a drug screen. (ECF No. 9-1, Exhibit 30). On July 28, 2020, the trial court entered an order suspending Mr. Urbina's probation pending further action by the court. (ECF No. 9-1, Exhibits 31-32). On October 9, 2020, the State filed a supplemental motion to revoke Mr. Urbina's probation, alleging that he had additionally violated his community control restrictions because he: (1) was indicted on two counts of failure to appear as required by recognizance, a fourth-degree felony; and (2) tested positive for methamphetamine and alcohol. (ECF No. 9-1, Exhibit 33).

On March 31, 2021, the court held a hearing on the State's motion to revoke Mr. Urbina's probation. (ECF No. 9-1, Exhibit 34; ECF No. 9-2, PageID # 785). At the outset of the hearing, Mr. Urbina's counsel informed the trial court that Mr. Urbina was requesting a continuance "based on the fact that he requested numerous probation papers; his community

control conditions; various items from the probation department over the better course of eight months." (ECF No. 9-2, PageID # 789). Counsel stated that Mr. Urbina had not received those records, and that "since he is aiding in obviously his own defense and potentially would take the stand to testify, he is requesting a continuance until he obtains those records so that he can be adequately prepared to go forward with this adjudicatory hearing." *Id*. at PageID # 790. After the State objected to a continuance, the trial court ordered the State to give Mr. Urbina certain portions of his probation file and took a brief recess so that Mr. Urbina and his counsel could review those documents. *Id*. at PageID # 793-96.

Following the recess, Mr. Urbina's counsel informed the court that Mr. Urbina maintained that the State was in possession of additional documents that had not been provided to him. *Id*. at PageID # 797. The State disputed that any additional documents existed. *Id*. The trial court denied Mr. Urbina's request for an additional continuance and ordered that the hearing would proceed. *Id*. at PageID # 798-99.

At the conclusion of the hearing, the court granted the State's motion to revoke Mr. Urbina's probation, finding by a preponderance of the evidence that Mr. Urbina left Texas without permission; failed to appear for a scheduled hearing before the court after being released on bond; failed to submit to a drug screen; and admitted using methamphetamine and alcohol. (ECF No. 9-1, Exhibit 34; ECF No. 9-2, PageID # 874-75). The court ordered that Mr. Urbina would serve be balance of his sentences in Case Numbers 05-CR-09186 and 05-CR-09264, for a total aggregate sentence of ten years and six months. *Id*.

**B.  Direct Appeal**

On April 27, 2021, Mr. Urbina, through counsel, timely filed a notice of appeal in both cases to the Third District Court of Appeals. (ECF No. 9-1, Exhibits 36-37). On May 4, 2021, the Third Appellate District *sua sponte* consolidated Mr. Urbina's appeals. (ECF No.

38). On August 11, 2021, Mr. Urbina filed his appellate brief, raising the following assignments of error:

1. The trial court violated Appellant's right to due process when it did not require the state to timely disclose the evidence against him.

2. The trial court violated Appellant's right to due process when it did not provide an opportunity to present documentary evidence.

3. The trial court violated Appellant's right to due process when it did not act as a neutral and detached body.

4. Mr. Urbina received ineffective assistance of counsel when his attorney failed to object to the court's questioning of the State's witnesses.

(ECF No. 9-1, Exhibit 39).

On December 6, 2021, the Third Appellate District affirmed. (ECF No. 9-1, Exhibit 41). On January 13, 2022, Mr. Urbina, acting *pro se*, timely filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 42). In his memorandum in support of jurisdiction, Mr. Urbina raised the following propositions of law:

1. The trial court violated Appellant's 5th and 14th Amendment due process rights when it failed to require the State to timely disclose evidence to the Appellant.

2. The trial court violated the Appellant's 5th and 14th Amendment due process rights when it failed to allow the Appellant an opportunity to present documentary evidence.

3. The trial court violated the Appellant's right to due process found in the Fifth and Fourteenth Amendments to the United States Constitution as it failed to act as a neutral and detached body.

4. Mr. Urbina received ineffective assistance of counsel when his attorney failed to object to the court's questioning of the State's witness.

(ECF No. 9-1, Exhibit 43). On March 29, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 9-1, Exhibit 44).

**C. Federal Habeas Action**

On May 18, 2022, Mr. Urbina, acting *pro se*, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1). Mr. Urbina's habeas petition raises four grounds for relief:

1.  Trial court violated Appellant's 5th and 14th Amendment due process rights when it failed to require the State to timely disclose evidence to the Appellant.

    <u>Supporting Facts</u>: The State failed to afford Mr. Urbina a copy of his conditions in a timely manner. The Court also did not allow the Appellant time to review interstate documents and many other documents. He needed documents to buttress testimony also. He was given no documents concerning his move and probation experiences in Texas, i.e., such as the moving of his probation.

2.  The trial court violated Appellant's 5th and 14th Amendment due process rights when it failed to allow the Appellant an opportunity to present documentary evidence.

    <u>Supporting Facts</u>: The Appellant stated with specificity the documents he sought to procure. In fact this statement was made. "He's maintaining that there's additional documents that have not been forwarded to him . . ." He had not been served notice of the court date, among other items he needed. In fact, another statement from the very hearing the statement above was made. "If there was any truth to his assertion that he had continued to report or had some kind of verbal permission he's made apparently no effort to obtain documentation of that fact and it's inconsistent with the documentation received via interstate compact."

3.  The trial court violated the Appellant's right to due process found in the Fifth and 14th Amendments when the trial court did not act as a neutral and detached body.

    <u>Supporting Facts</u>: The court partook in questioning the State's witness which indicated an opinion on the evidence. That is improper and shows the court was unreasonable.

4.  Mr. Urbina received ineffective assistance of counsel when his attorney failed to object to the court's questioning of the State's witness.

    <u>Supporting Facts</u>; Counsel failed to object to the trial court's impermissible questioning of a State's witness, pointed at in ground three. That failed to preserve this issue for appeal. That is ineffective.

*Id*. The Warden filed an answer/return of writ on October 13, 2022. (ECF No. 9). Mr.

Urbina did not file a traverse, so on October 30, 2023, I entered an order establishing a final

deadline of December 29, 2023 for him to do so. (*See* ECF non-document entry dated October

30, 2023). I also advised Mr. Urbina that if he did not do so, I would proceed to consider his

petition. *Id*. Mr. Urbina did not file a traverse by December 29, 2023 and has not filed a traverse to date.

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Defiance County Court of Common Pleas sentenced Mr. Urbina, and I take judicial notice that Defiance County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Urbina's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require

8

pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D. <u>AEDPA Standard of Review</u>**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas

law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not

11

suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS[1]

### A. Grounds One and Two: Violation of Due Process

In his first ground for relief, Mr. Urbina asserts that his due process rights were violated when the State failed to timely turn evidence over to him. In his second ground for relief, he asserts that his due process rights were violated because the trial court prevented him from presenting evidence in his defense. As the Third Appellate District noted, however, the real thrust of both grounds is that the trial court violated his due process rights by not granting him a continuance. (ECF No. 9-1, Exhibit 41, ¶ 10). Before the Third Appellate

---

[1] The Warden argues that Mr. Urbina has procedurally defaulted on claims challenging his original conviction and that those claims are also time-barred. However, Mr. Urbina has not asserted any claim based on his original conviction. Instead, all four grounds for relief relate solely to the revocation of his probation. The Warden concedes that those claims are timely and has not made any procedural default argument with respect to them.

District, Mr. Urbina framed the issue regarding his first ground as "[d]oes failure to grant time to review disclosed evidence constitute a violation of due process." (ECF No. 9-1, Exhibit 39). Mr. Urbina similarly framed the issue regarding his second ground as "[d]oes failure to grant a continuance to gather documents constitute a violation of due process?" *Id*. Mr. Urbina framed his arguments the same way here, and I will construe grounds one and two as asserting that the trial court's failure to grant him a continuance violated his due process rights. Because the two issues overlap, both the Warden and the Third Appellate District addressed them together, and I will do the same.

While a parole revocation proceeding is "not a part of the criminal prosecution . . . the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). In particular, the parolee is entitled to two hearings: (1) a preliminary hearing at the time of arrest and detention to determine whether there is probable cause of a parole violation; and (2) a final revocation hearing, at which the parolee must be given the opportunity to be heard and to show that he did not violate the conditions of parole or that any violation does not warrant revocation. *Morrissey*, 408 U.S. at 485-88. The "minimum requirements" of due process include "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id*. at 488-89.

13

The same rules apply to revocation of probation. *Gagnon*, 411 U.S. at 782.

As noted above, Mr. Urbina argues that he was denied due process because the trial court did not give him sufficient time to review the State's evidence and did not grant him a continuance to gather additional evidence supporting his position that he did not violate his probation. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Likewise, "[n]ot every restriction on counsel's time or opportunity to investigate or consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Rather, denial of a continuance rises to the level of a constitutional violation only if the trial court engages in "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable reason for delay.'" *Id*. at 11-12 (quoting *Ungar*, 376 U.S. at 589); *see also Beuke v. Houk*, 537 F.3d 618, 641 (6th Cir. 2008).

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589. Relevant factors include "(1) the length of the requested delay; (2) whether other continuances had been requested and granted; (3) whether the delay was for legitimate reasons; (4) the inconvenience to the parties, witnesses, counsel, and the court; (5) whether the defendant contributed to the circumstances giving rise to the request; (6) whether denying the continuance resulted in prejudice to the defendant; and (7) the complexity of the case." *Landrum v. Mitchell*, 625 F.3d 905, 928 (6th Cir. 2010).

14

"To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he 'must also show that the denial of a continuance actually prejudiced his . . . defense.'" *Beuke*, 537 F.3d at 641 (quoting *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004)). "'Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise [would have benefited] the defense.'" *Id*. (quoting *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003)).

In rejecting Mr. Urbina's argument that the trial court violated his due process rights by not granting him a continuance, the Third Appellate District held as follows:

{¶15} Initially, it should be reiterated that this was not Urbina's first request for a continuance. As noted above, Urbina's adjudicatory hearing was continued or rescheduled a total of six times between October 2020 and March 2021. Some of these continuances were necessitated by Urbina's own conduct. For example, the adjudicatory hearing scheduled for October 8, 2020 had to be continued when Urbina's original trial counsel moved to withdraw after "receiv[ing] written correspondence threatening a complaint to the Office of Disciplinary Counsel if [he] d[id] not comply with [Urbina's] orders." Similarly, after the adjudicatory hearing had already been continued three times, it was again moved from a rescheduled date of January 14, 2021, in order to accommodate Urbina's third trial counsel, who was appointed on December 31, 2020, after Urbina's second trial counsel moved to withdraw on grounds that Urbina had filed a grievance against him in the Office of Disciplinary Counsel. Urbina's third trial counsel then successfully moved to continue the adjudicatory hearing from February 4, 2021 to March 4, 2021, and finally from March 4, 2021 to March 31, 2021. Each of the final two continuances was granted to allow Urbina's third trial counsel further time to more fully prepare Urbina's defense.

{¶16} In addition, there is no indication in the record as to how long the proceedings would have been delayed had Urbina's request for a continuance been granted. See *Unger*, 67 Ohio St.2d at 69. Conspicuously absent from Urbina's request for a continuance is any estimation of how long it would take to review the documents provided by the State or obtain the other evidence supposedly necessary for his defense. *Id*.

{¶17} Finally, Urbina's reasons for requesting another continuance did not justify the added inconvenience to the litigants, the witnesses, and the trial court. Urbina first maintains a continuance was necessary to thoroughly review the documents the State provided to him on the day of the March 31, 2021 adjudicatory hearing. These documents were not admitted as exhibits at the hearing and some of them do not

15

appear in the record. However, from the transcript of the hearing, we are able to discern that the State provided Urbina with a copy of his community control conditions, a copy of hold orders sent to the Corrections Center of Northwest Ohio ("CCNO"), and a statement from the Interstate Compact Offender Tracking System ("ICOTS") that Urbina "absconded [from Texas] and that he did not have permission to be in Ohio." After receiving the documents from the State, the trial court granted a brief recess to allow Urbina to review the documents with counsel.

{¶18} Considering the kind of documents provided to Urbina on the morning of the March 31, 2021 adjudicatory hearing, an additional continuance was not necessary. From the record before us, it appears the documents provided to Urbina were not voluminous or complex. In addition, some of them, specifically the copy of Urbina's community control conditions, were available from the clerk of courts throughout the pendency of the revocation proceedings. Furthermore, Urbina had signed and been given a copy of his community control conditions when he was released from prison in February 2019, and both of the State's motions to revoke Urbina's community control quoted each of the allegedly-violated community control conditions verbatim. Lastly, some of the documents, specifically the orders sent to CCNO directing it to hold Urbina on the community control violations, were completely irrelevant to whether Urbina actually violated the conditions of his community control. As the documents provided to Urbina were uncomplicated and either immaterial to his defense or filled with information previously conveyed (or otherwise readily available) to Urbina, a continuance was not required; the brief recess was more than sufficient for Urbina to review the documents with counsel and incorporate them into his defense.

{¶19} Urbina also argues a continuance was necessary to allow him to obtain additional evidence crucial to his defense. Urbina claims he needed additional time to obtain three categories of evidence: (1) documents he signed during the July 17, 2020 meeting with a supervising probation officer; (2) evidence showing that he had not been served with notice of the probable-cause hearing set for July 21, 2020; and (3) evidence refuting the information received from ICOTS and showing "he was acting properly with regard to his supervision in Texas."

{¶20} Regarding the first category of evidence, at the March 31, 2021 adjudicatory hearing, the probation officer with whom Urbina met on July 17, 2020, represented that Urbina did not sign anything during their meeting. Moreover, Urbina failed to clearly describe the contents of the documents he purportedly signed or explain how the documents would be relevant to rebutting the State's evidence that he violated the conditions of his community control. Here, given the doubts over the existence of these documents and their utility to Urbina in conducting his defense, we cannot see any legitimate basis for granting an additional continuance.

{¶21} Concerning the other two categories, we observe that Urbina had ample opportunity to secure this evidence in advance of the March 31, 2021 adjudicatory hearing. As of the date of the adjudicatory hearing, the case had been pending for nearly nine months. Setting aside the fact that Urbina changed attorneys twice

16

between October and December 2020, he had more than enough time to work with his third trial counsel to obtain this evidence. Urbina's third trial counsel was appointed on December 31, 2020, after which he succeeded in delaying the adjudicatory hearing for three months in order to prepare Urbina's defense. Although Urbina's third trial counsel stated that Urbina had written "about six letters" to two probation officers seeking copies of his community control conditions and the hold orders sent to CCNO, there is no indication in the record of any attempt to obtain this evidence by a subpoena. Nor does it appear that Urbina undertook any effort to contact Texas probation officials or to communicate with Defiance County officials regarding whether notice of the July 21, 2020 probable-cause hearing had been properly served. *See Sowders*, 4 Ohio St.3d at 145. Nor did Urbina demonstrate that this evidence could actually be obtained or how much additional time it might take to receive the evidence. *Id*.

{¶22} For the foregoing reasons, we hold that the trial court did not violate Urbina's right to due process by refusing to grant yet another continuance.

(ECF No. 9-1, Exhibit 41).

Applying AEDPA deference, the Third Appellate District's decision was not contrary to or an unreasonable application of controlling law. Rather, the Third Appellate District reasonably determined that Mr. Urbina failed to demonstrate that a continuance was necessary in light of the two continuances he had already received, the relative simplicity of the documents the State produced at the hearing, and Mr. Urbina's inability to explain how the additional documents existed or were necessary to support his defense. *See Esparza v. Anderson*, No. 3:96 CV 7434, 2012 WL 2872149, at *34-35 (N.D. Ohio July 12, 2012) (holding that state court did not err in denying continuance of trial date where, among other things, trial court had already granted two previous continuances and petitioner did not specify the duration of the requested continuance and did not identify specific records or witnesses needed). The Third Appellate District also reasonably held that Mr. Urbina had ample time to subpoena or otherwise obtain the documents he claimed he needed during the three months between his third attorney's appointment and the hearing. I therefore recommend that the Court deny Mr. Urbina's first and second grounds for relief on the merits.

**B.  Ground Three: Judicial Bias**

In his third ground for relief, Mr. Urbina asserts that he was denied his right to due process because the trial court's questioning of Julie Berry, a Defiance County probation officer, during the revocation hearing demonstrated that the trial court was impermissibly biased against Mr. Urbina.

"The due process clause of the Fourteenth Amendment guarantees a criminal defendant, as any litigant, the right to a fair trial in a fair tribunal." *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002) (citing *In re Murchison*, 349 U.S. 133, 136 (1955); *see also Gordon v. Lafler*, 710 F. App'x 654, 663 (6th Cir. 2017) (stating that the due process clause "establishes a 'constitutional floor,' which requires that the parties be given 'a "fair trial in a fair tribunal" with no actual bias against the defendant or interest in the outcome of his particular case.'") (quoting *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)). "So central is this right that failure to have a trial before such an impartial adjudicator can never be a harmless error." *Id*. Although "trial by an impartial judge is a core right," however, a court "must consider the judge's alleged bias in light of his or her role in the courtroom," as a judge is "not a mere moderator," but also the "governor" of the proceeding. *Id*. (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)).

The Sixth Circuit "has looked to the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540, 552 [(1994)], to provide the standard for deciding judicial bias claims." *Alley*, 307 F.3d at 386. In *Liteky*, the Supreme Court held that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." 510 U.S. at 555. Rather, such remarks support a bias claim "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. Remarks that demonstrate "impatience,

18

dissatisfaction, annoyance, and even anger . . . are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555-56. Moreover, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from judicial bias claims. *Id.* at 556.

"The Sixth Circuit has directed that on habeas review, courts have 'narrow authority' to review judicial bias claims." *Reese v. Ohio*, No. 3:21-CV-993, 2023 WL 5611611, at *9 (N.D. Ohio May 16, 2023), *report and recommendation adopted*, 2023 WL 5607633 (N.D. Ohio Aug. 30, 2023) (quoting *Allen v. Hawley*, 74 F. App'x 457, 461 (6th Cir. 2003)). "Habeas review should not be granted unless the state court applied U.S. Supreme Court guidelines for judicial bias claims in an 'unreasonable' fashion 'that is to say, inordinate, illogical, and ultimately, irrational.'" *Id.* (quoting *Allen*, 74 F. App'x at 461).

Mr. Urbina bases his judicial bias argument on the following exchange between the trial court and Ms. Berry:

> Q: Seems to me, I have a recollection from years ago and I haven't heard reference to it recently cause it's not come up. If -- I mean way back when we had a County Probation Department prior to APA supervision and that obviously is well prior to the, again having -- when a probationer got permission to go somewhere, there was actually a physical document that they called a travel permit.
>
> A: Correct.
>
> Q: Do they still use those?
>
> A: Yes. Anytime they leave the State of Ohio they have to have a travel permit.
>
> Q: And it seems to me that they were required to like, if they went somewhere they had to go get that signed by a --
>
> A: Local Police.
>
> Q: -- law enforcement or a probation officer or somebody there?
>
> A: Correct.
>
> Q: Is that procedure still in effect?

19

A: Yes, we require that as well. So, if they go to the State of Indiana or whatever county they're in, they have to go to the local police department or the local sheriff's office and have that signed.

Q: There was no reference to it in your dealings with Mr. Urbina when the police called you out, was there any reference to him having a travel permit?

A: No. And they are required to keep that on their person at all times if they're in a different state under probation.

Q: [D]oes that apply to Interstate Compact people as well?

A: Yes, because they have to have a permit to leave the State of Ohio to go to the next state.

Q: What about from Texas, do you?

A: Yes, there would have been a notice of departure sent from Texas to let me know that he was coming here and then I would have filled out a notice of arrival when he checked in with my office. Those two things were not done.

Q: Did you ask him if he had a travel permit?

A: I did not.

(ECF No. 9-2, PageID # 816-19).

The Third Appellate District rejected Mr. Urbina's argument that the trial court's

questions evinced improper partiality, holding as follows:

{¶29} Trial courts enjoy broad discretion with respect to the questioning of witnesses. "In regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom." *State v. Davis*, 79 Ohio App.3d 450, 456 (4th Dist.1992). The trial court "has active duties to perform in maintaining justice and in seeing that the truth is developed and may, for such purpose, put proper questions to the witnesses, and even leading questions." *Id*.

{¶30} Evid.R. 614(B) recognizes the court's authority in this domain, allowing that "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." " 'In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.' " *State v. Baston*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98 (2d Dist.1982). "A trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially

damaging to the defendant." *State v. Blankenship*, 102 Ohio App.3d 534, 548 (12th Dist.1995).

{¶31} Pursuant to Evid.R. 101(C)(3), most of the Rules of Evidence, including Evid.R. 614(B), are inapplicable to community-control revocation hearings. Nonetheless, Evid.R. 614(B) serves as a guide for trial-court questioning in the community-control revocation setting. It would make little sense for a trial court to have less authority to question witnesses at a revocation hearing than at a criminal trial. To the contrary, "a trial court enjoys even greater freedom in questioning witnesses during [non-jury proceedings] because the court cannot prejudicially influence a jury with its questions or demeanor." *Yurkowski v. Univ. of Cincinnati*, 10th Dist. Franklin No. 11AP-974, 2013-Ohio-242, ¶ 61.

{¶32} Here, nothing in the trial court's questioning of Berry suggests favoritism toward the State or hostility toward Urbina. During redirect examination, Berry testified that if Urbina had been granted permission to leave Texas and come to Ohio, she would have expected to receive a copy of his travel permit. However, Berry's initial testimony included little information about what travel permits are, the procedures for issuance and use of travel permits, and whether Texas issues travel permits in the same manner as Ohio. These issues were relevant to understanding whether Urbina had violated the terms of his community control by coming to Ohio, and the trial court's questioning produced needed clarification. Nothing about the trial court's questioning indicates that it had prejudged the matter, that it was trying to elicit testimony to bolster the State's case, or that it had some vendetta against Urbina. Therefore, as the trial court's questioning does not betray bias, prejudice, or partiality, we conclude that the trial court did not violate Urbina's right to due process. *See State v. Schwartz*, 12th Dist. Clermont Nos. CA2019-04-029, CA2019-04-030 and CA2019-04-031, 2019-Ohio-4912, ¶ 31; *State v. Greenway*, 1st Dist. Hamilton No. C-160511, 2017-Ohio-7729, ¶ 5-13.

(ECF No. 9-1, Exhibit 41).

The Third Appellate District's holding was not contrary to or an unreasonable application of controlling law. Rather, as the Third Appellate District reasonably held, the trial court's questions appeared designed to clarify the procedures involved when an individual on probation travels from one jurisdiction to the other. Nothing in the trial judge's questioning revealed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. Accordingly, I recommend that the Court deny Mr. Urbina's third ground for relief.

**C.** **Ground Four: Ineffective Assistance of Counsel**

In his fourth and final claim for relief, Mr. Urbina asserts that he received the ineffective assistance of trial counsel because his counsel failed to object to the trial judge's questioning of Ms. Berry. Mr. Urbina's argument is not well-taken.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption] that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. at 830 (quoting *Strickland*, 466 U.S. at 687).

The Third Appellate District rejected Mr. Urbina's ineffective assistance claim on the merits. Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

In rejecting Mr. Urbina's claim, the Third Appellate District held as follows:

Nor was Urbina's trial counsel ineffective for failing to object to the trial court's questioning. To sustain a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient or unreasonable under the circumstances. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Counsel does not perform deficiently or unreasonably by failing to object to entirely permissible questioning. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 76-89; *State v. Mieczkowsk*, 7th Dist. Jefferson No. 17 JE 0016, 2018-Ohio-2775, ¶ 82-84, 88. Thus, because the trial court's questioning of Berry was proper, Urbina cannot establish that his trial counsel was ineffective for failing to object. *See State v. Wortham*, 6th Dist. Lucas No. L-01-1449, 2002-Ohio-3976, ¶ 58-61 (trial counsel was not ineffective for failing to object to trial court's questioning of a witness because trial court's questioning was appropriate, displaying no "obvious bias, prejudice," or improper partiality).

(ECF No. 9-1, Exhibit 41, ¶ 33).

Applying the doubly-deferential standard under AEDPA, the Third Appellate District's holding was not contrary to or an unreasonable application of governing law. Rather, as noted above, the trial court's questioning and appeared designed simply to clarify the travel procedure for probationers. The trial judge's questions did not reflect any improper bias, and Mr. Urbina has not established that they were otherwise objectionable. Mr. Urbina's counsel was not ineffective for failing to pursue meritless objections. *See James v. Sheldon*, No. 1:17-CV-2095, 2021 WL 405522, at *6 (N.D. Ohio Feb. 5, 2021) (holding that trial

counsel was not ineffective in failing to object to alleged witness bolstering where Ohio appellate court held that none of the disputed questions constituted bolstering under Ohio law); *Thomas v. Sheldon*, No. 5:17-cv-1769, 2020 WL 6568355, at *16 (N.D. Ohio Sept. 30, 2020), *report and recommendation adopted*, 2020 WL 5810021 (N.D. Ohio Sept. 30, 2020) ("It is axiomatic that trial counsel is not ineffective for failing to raise a futile or meritless argument, motion or objection").

But even assuming Mr. Urbina's counsel was ineffective, Mr. Urbina cannot demonstrate prejudice, meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There is no reason to think that, had Mr. Urbina's counsel objected to the trial judge's questions, the trial judge would have concluded that Mr. Urbina had complied with his community control sanctions and would have denied the State's motion to revoke Mr. Urbina's probation. Mr. Urbina thus has not established either element of a *Strickland* claim, and I recommend that the Court deny his fourth ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the

courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].")." In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Urbina has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII. RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Urbina's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  June 17, 2024                    /s/*Jennifer Dowdell Armstrong*
                                          Jennifer Dowdell Armstrong
                                          U.S. Magistrate Judge


### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).